DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas which, following a trial to the bench, granted appellees, Mark and Derek Grieselding, judgment against appellant, Kevin Krischak, d.b.a. Krischak Marine Auto Collision, in the amount of $ 1,612.02, plus statutory interest from the date of judgment, and attorney fees in the amount of $ 9,020. For the reasons that follow, we affirm, in part, and reverse, in part, the decision of the trial court. *Page 2 
 {¶ 2} This matter arose as a result of appellant's restoration of appellees' 1969 Dodge Charger. On February 12, 1999, appellant estimated the cost of the restoration to be $ 5,000. Appellant, however, testified that it was an "open estimate" because he would not know the extent of damage to the vehicle's body until he began the restoration. Appellees paid $ 2,500 as a down payment and another $ 2,500 in 2001. During the course of restoration, appellant discovered that the trunk pans were rotten and charged appellees an additional $ 600 for labor to install the replacement pans, which appellees provided to appellant at appellees' expense. On or about December 24, 2003, when appellees finally took possession of the vehicle, appellees paid appellant $ 429 for additional charges for repairs, gasoline, storage and parts ($ 35 for bumper bolts and $ 55 for rear bumper brackets). In addition to the above, appellees incurred expenses for replacement parts they provided to appellant, including $ 250 for a front fender, $ 139.85 for door handles and gaskets, and $ 57.49 for paint.
 {¶ 3} On February 19, 2004, appellees filed a complaint against appellant alleging fraud, breach of contract, negligent restoration, and violations of R.C. 1345.01, et seq., the Ohio Consumer Sales Practices Act ("OCSPA"). Appellees dismissed all their claims prior to trial except for those arising out of the OCSPA. On April 12, 2004, appellant filed a counterclaim, but dismissed it prior to trial. Appellees' OCSPA claim was tried to the court on November 7, 2005.
 {¶ 4} In a judgment entry journalized on December 13, 2005, the trial court found that appellant failed to post at his place of business a sign advising consumers of their *Page 3 
right to receive a written estimate. The court also found that appellant provided appellees a written "Auto Body Repair Order" form, which stated Mark Grieselding's name, the date, and had checkmarks next to the phrases: (1) "rear panel," (2) "CK on fenders LF/RT," (3) "door handles LF/RT," and (4) "Bumpers re chrome." The trial court, however, found that the form failed to identify a description of the vehicle, the work to be performed, appellees' address or telephone number, the anticipated completion date, and the cost of the restoration. The court further found that, except for the front bumper, appellant failed to return to appellees the used parts taken from the automobile.
 {¶ 5} Based upon the evidence presented, the trial court held that appellant committed deceptive acts or practices by violating Ohio Adm. Code 109:4-3-13(A)(1), (A)(2), and (C)(13). The court also held that based upon the written estimate prepared by appellant, appellant agreed to provide rear panels, fenders, door handles and bumpers as part of the restoration work, as those items were specifically listed in the "Auto Body Repair Order" form. As such, the trial court held that appellees paid $ 537.34 for parts which should have been included in the $ 5,000 estimate.[1] Pursuant to R.C. 1345.09(B), the trial court awarded appellees $ 1,612.02 in damages, which equals three times the amount of appellees' actual damages of $ 537.34. Pursuant to R.C. 1345.09(F)(2), the trial court also awarded appellees $ 9,020 in attorney fees. *Page 4 
 {¶ 6} Appellant timely appealed the decision of the trial court and raises the following assignments of error:
 {¶ 7} "Assignment of Error I:
 {¶ 8} "The trial court abused its discretion when it ruled that appellee may, under the Ohio Consumer Sales Practice Act, find that a consumer can recover three times the amount of his actual damages or $ 200.00, whichever is greater.
 {¶ 9} "Assignment of Error II:
 {¶ 10} "The trial court abused its discretion when it awarded attorney fees to the appellee under the Ohio Consumer Sales Practice Act in the amount of $ 9,020.00."
 {¶ 11} Appellant argues in his first assignment of error that his violation of OCSPA, failure to post a sign, was minor, that any harm suffered by appellee "was nominal at best," and that appellee was not entitled to any more than $ 200 statutory damages. Appellant also argues that the trial court should not have ordered treble damages because there was no fraud committed and no evidence of bad faith. Appellant cites Logsdon v. Graham Ford Co. (1978), 54 Ohio St.2d 336, in support of his argument, wherein the Ohio Supreme Court held that treble damages were not appropriate where there was no evidence of grave malice or bad faith. See, also, Atram v. Star Tool Die Corp. (1989),64 Ohio App.3d 388; Buller v. Respicare, Inc. (1987), 39 Ohio App.3d 17; State, ex rel.Kabatek v. Stackhouse (1983), 6 Ohio St.3d 55; and Villella v. WaikemMotors, Inc. (1989), 45 Ohio St.3d 36. *Page 5 
 {¶ 12} R.C. 1345.02(A) states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(B) lists certain "deceptive" acts or practices pursuant to OCSPA. This list, however, is not exhaustive and, pursuant to R.C. 1345.05(B)(2), the Ohio Attorney General is empowered to adopt, amend, and repeal substantive rules within the Ohio Administrative Code that define, with reasonable specificity, acts or practices which violate R.C. 1345.02. Pertinent to this case, Ohio Adm. Code 109:4-3-13(A)(1), (A)(2), and (C)(13) state the following:
 {¶ 13} "109:4-3-13 Motor vehicle repairs or services
 {¶ 14} "(A) It shall be a deceptive act or practice in connection with a consumer transaction involving the performance of either repairs or any service upon a motor vehicle where the anticipated cost exceeds twenty-five dollars and there has been face to face contact at the supplier's place of business during the hours such repairs or services are offered, between the consumer * * * and the supplier * * *, prior to the commencement of the repair or service for a supplier to:
 {¶ 15} "(1) Fail, at the time of the initial face to face contact and prior to the commencement of any repair or service, to provide the consumer with a form which indicates the date, the identity of the supplier, the consumer's name and telephone number, the reasonably anticipated completion date, and if requested by the consumer, the anticipated cost of the repair or service. The form shall also clearly and conspicuously contain the following disclosures in substantially the following language: *Page 6 
 {¶ 16} "`Estimate
 {¶ 17} "`You have the right to an estimate if the expected cost of repairs or services will be more than twenty-five dollars. Initial your choice:
 {¶ 18} "`_____ written estimate
 {¶ 19} "`_____ oral estimate
 {¶ 20} "`_____ no estimate'
 {¶ 21} "(2) Fail to post a sign in a conspicuous place within that area of the supplier's place of business to which consumers requesting any repair or service are directed by the supplier or to give the consumer a separate form at the time of the initial face to face contact and prior to the commencement of any repair or service which clearly and conspicuously contains the following language:
 {¶ 22} "`Notice
 {¶ 23} "`If the expected cost of a repair or services is more than twenty-five dollars, you have the right to receive a written estimate, oral estimate, or you can choose to receive no estimate before we begin work. Your bill will not be higher than the estimate by more than ten per cent unless you approve a larger amount before repairs are finished. Ohio law requires us to give you a form so that you can choose either a written, oral, or no estimate.' * * *
 {¶ 24} "(C) In any consumer transaction involving the performance of any repair or service upon a motor vehicle it shall be a deceptive act or practice for a supplier to: *Page 7 
 {¶ 25} "(13) Fail to tender to the consumer any replaced parts, unless the parts are to be rebuilt or sole by the supplier, or returned to the manufacturer in connection with warranted repairs or services, and such intended reuse or return is made known to the consumer prior to commencing any repair or service * * *."
 {¶ 26} Where a supplier has engaged in an act or practice declared to be deceptive by a rule adopted pursuant to R.C. 1345.05(B)(2), the violated consumer has a choice of remedies: "the consumer may rescind the transaction or recover, * * * three times the amount of the consumer's actual damages or two hundred dollars, whichever is greater, * * *." R.C. 1345.09(B). The choice of remedy is "the consumer's, not the trial court's." Lawson v. Mack (Apr. 19, 1991), 6th Dist. No. L-90-230, citing, Bierlein v. Alex's Continental Inn, Inc. (1984),16 Ohio App.3d 294.
 {¶ 27} In this case, appellees chose to recover their damages, rather than rescind the transaction. Appellees paid for automobile parts that, according to the "Auto Body Repair Order" form, should have been bought by appellant. As such, we find that there was competent evidence upon which the trial court could rely in determining that appellees suffered actual damages in the amount of $ 537.34.
 {¶ 28} Additionally, R.C. 1345.09(B) entitles a consumer to recover three times the amount of actual damages suffered due to a supplier's deceptive acts or practices. In order to make a finding that a deceptive act or practice has occurred, the Ohio Administrative Code does not require proof of intent or knowledge; rather, any failure to comply with the regulations is deemed a "deceptive act or practice." Ohio Adm. Code *Page 8 109:4-3-13(A)(1), (A)(2), and (C)(13). See, also, Zindle v. HawksAppliance Service, Inc. (Sept. 2, 1987), 9th Dist. No. 13016, citingMoyer Excavating Trucking v. Lewis (Nov. 16, 1984), 6th Dist. No. H-84-11. Moreover, we note that "[t]he treble damages provision of R.C.1345.09(B) is intended to be imposed as a penalty for misconduct."Shellhorn v. Kohler Chrysler-Plymouth (July 15, 1993), 3d Dist. No. 16-92-29, citing, French v. Dwiggins (1984), 9 Ohio St.3d 32, 35-36.
 {¶ 29} We further find that appellant's reliance on Logsdon, supra,Atram, supra, Buller, supra, Stackhouse, supra, and Villella, supra, is misplaced. The cases cited by appellant hold that, for an award of punitive damages, evidence of fraud, malice, or bad faith must be established. None of the cases cited by appellant, however, concerned violations of the OCSPA. Because the OCSPA statutorily provides for an award of treble damages when a supplier has engaged in deceptive acts or practices, we find that the cases cited by appellant are factually and legally distinguishable from this case.
 {¶ 30} Accordingly, we find that the trial court did not abuse its discretion in awarding appellees judgment in the amount of $ 1,612.02, which totals three times appellees' actual damages of $ 537.34. Appellant's first assignment of error is therefore found not well-taken.
 {¶ 31} Appellant argues in his second assignment of error that the trial court abused its discretion when it awarded attorney fees to appellees. Specifically, appellant argues that appellees should not be entitled to attorney fees because they failed to establish that his conduct was willful, intentional or malicious, and because attorney fees *Page 9 
are not generally granted in fraud and conversion actions. Relying onBittner v. Tri-County Toyota, Inc. (1991), 58 Ohio St.3d 143, appellant further argues that the trial court failed to identify what factors it considered in determining the amount of attorney fees to award.
 {¶ 32} An award of attorney fees pursuant to R.C. 1345.09(F)(2) should not be reversed absent a showing that the trial court abused its discretion. Bittner, 58 Ohio St.3d at 146. As stated by the Ohio Supreme Court:
 {¶ 33} "It is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." Id., citing Brooks v. Hurst Buick-Pontiac-Olds-GMC,Inc. (1985), 23 Ohio App.3d 85, 91.
 {¶ 34} Initially, we find that, in order for appellees to recover attorney fees, appellees were not required to demonstrate that appellant acted willfully, intentionally or maliciously when violating the OCSPA. Appellant is correct that typically a prevailing party is not entitled to recover attorney fees, in the absence of statutory authorization, unless the losing party has acted in bad faith. See Stackhouse,6 Ohio St.3d at 55-56; Atram, 64 Ohio App.3d at 391; Buller,39 Ohio App.3d at 17. We find, however, that *Page 10 
R.C. 1345.09(F) statutorily authorizes the trial court to award reasonable attorney fees, limited to the work reasonably performed, if the supplier knowingly committed an act or practice that violates the OCSPA. "A supplier acts `knowingly' if it intentionally committed the act involved." Birch v. Castrucci, Inc. (Aug. 20, 1999), 2d Dist. No. 17512, citing Einhorn v. Ford Motor (1990), 48 Ohio St.3d 27. "The statute does not require that the supplier must know that it was violating the law." Id., citing Fletcher v. Don Foss of Cleveland,Inc. (1993), 90 Ohio App.3d 82. Accordingly, we find that appellees are entitled to recover the attorney fees incurred as a result of their pursuit of an OCSPA claim against appellant.
 {¶ 35} At trial, appellees' counsel submitted into evidence bills totaling $ 7,820, computed at an hourly rate of $ 200 per hour, and testified that he spent additional time preparing for trial, totaling 7.3 hours, and time in trial, totaling 5.5 hours, which were not included in the bills submitted. Thus, at the time of his testimony, appellees' counsel testified that he was owed a total of $ 10,380, plus the time he would spend preparing a post-trial memorandum. The trial court awarded appellees $ 7,820, totaling the "reasonable attorney fees incurred prior to trial," and $ 1,200, incurred for counsel's time during trial, for a total of $ 9,020 in attorney fees.
 {¶ 36} In Bittner, the Ohio Supreme Court held that, when there are claims in a case that can be separated into those for which attorney fees are recoverable and those for which no fees are recoverable, "the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded." Bittner, *Page 11 58 Ohio St.3d at 145, citing Hensley v. Eckerhart (1983), 461 U.S. 424. In this case, appellees filed suit against appellant alleging fraud, breach of contract, negligence, and violations of the OCSPA. Appellees dismissed their fraud, breach of contract, and negligence claims prior to trial and their judgment is based solely upon appellant's violations of the OCSPA. Accordingly, although we agree that the trial court did not abuse its discretion in awarding appellees attorney fees incurred while pursuing the OCSPA claim, to the extent that the trial court could have separated the fees, we find that appellees are not entitled to an award of attorney fees for time spent preparing their claims against appellant for fraud, breach of contract, and negligence.
 {¶ 37} Additionally, when awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), to enable an appellate court to conduct a meaningful review, "the trial court must state the basis for the fee determination." Id. at 146. In Bittner, the court held:
 {¶ 38} "* * * the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B). These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and *Page 12 
whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation." Bittner, 58 Ohio St.3d at 145-146.
 {¶ 39} In this case, as in Bittner, the trial court did not award appellees the full amount of attorney fees requested and did not state what factors it took into consideration. Without such a statement from the trial court, it is not possible for an appellate court to conduct a meaningful review. Appellees' counsel testified that the bills presented at trial were "all of [his] billing statements and billing invoices since [he] took on this representation." The trial court awarded appellees the entire $ 7,820 billed to them, despite the fact that they are only entitled to attorney fees as to one of the claims they pursued. Conversely, there is no explanation for the trial court's failure to award attorney fees for the 7.3 hours appellees' counsel testified he spent on the case, since the last billing, but prior to trial. Moreover, we have no information regarding whether the trial court considered any of the relevant factors set forth in Bittner when determining the amount of attorney fees to be awarded.
 {¶ 40} Accordingly, we find that the matter must be remanded to the trial court to determine whether the time spent pursuing the various causes of action can be separated and, if possible, which attorney fees were incurred for preparation and pursuit of appellees' OCSPA claim and which were incurred in pursuit of appellees' fraud, breach of contract and negligence claims, as appellees are not entitled to recover attorney fees generated while pursuing the latter causes of action. The trial court must also specify *Page 13 
which factors contained in DR 2-106(B) the trial court considered, if any, when determining the amount of appellees' award of attorney fees. Because we find that there are insufficient findings made to conduct a meaningful review on appeal, appellant's second assignment of error is found well-taken.
 {¶ 41} On consideration whereof, the court finds that the judgment of the Lucas County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded to the trial court for further consideration in accordance with this decision. Appellant and appellee are each ordered to pay one-half of the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Arlene Singer, J., CONCUR.
[1] The trial court held that parts not included in the "Auto Body Repair Order" form, such as the trunk pans, were not part of the agreement and, thus, were additional expenses properly paid by appellees. *Page 1